Slip Op. 05-103

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| KAIYUAN GROUP CORP., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Before: WALLACH, Judge |
| | : | Consol. Court No.: 02-00573 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | **PUBLIC VERSION** |
| | : | |
| and | : | |
| | : | |
| PENCIL SECTION WRITING | : | |
| INSTRUMENT MANUFACTURERS | : | |
| ASS'N, et al., | : | |
| | : | |
| Defendant-Intervenors. | : | |

[United States Department of Commerce's Final Results on Certain Cased Pencils from China are SUSTAINED]

Dated: August 23**,** 2005

DeKieffer & Horgan, (James Kevin Horgan) for Plaintiff Kaiyuan Group Corporation.

Lafave & Sailer LLP, (Francis J. Sailer) for Plaintiff China First Pencil Co., Ltd., et al.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; Michael D. Panzera, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; and Ada E. Bosque, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant United States.

Neville Peterson LLP, (George W. Thompson) for Defendant-Intervenors Pencil Section, Writing Instrument Manufacturers Association., et. al.

1

## OPINION

**WALLACH, Judge:**

### I
### Introduction

This matter comes before the court following the court's remand of May 14, 2004, to the United States Department of Commerce ("the Department" or "Commerce"). In Kaiyuan Group Corp. v. United States, 343 F. Supp. 2d 1289 (CIT 2004) ("Kaiyuan I"), the court remanded Commerce's findings in Certain Cased Pencils from the People's Republic of China: Final Results and Partial Rescission of Antidumping Duty Administrative Review, 67 Fed. Reg. 48,612 (Jul. 25, 2002) as amended in Notice of Amended Final Results and Partial Rescission of Antidumping Duty Administrative Review: Certain Cased Pencils from the People's Republic of China, 67 Fed. Reg. 59,049 (Sept. 19, 2002).[1] On September 30, 2004, Commerce filed its Results of Redetermination Pursuant to Court Remand ("Remand Redetermination"). Plaintiffs, China First Pencil Co., Ltd. ("Plaintiffs" or "China First"), filed its Brief on Remand Results ("Plaintiff's Brief"). Defendant filed its Response to Plaintiffs' Comments Upon the Remand Determination ("Defendant's Response"); Defendant-Intervenors, Pencil Section, Writing Instrument Manufacturers Association et al. ("Defendant-Intervenors" or "WIMA"), filed their Response Brief Concerning Remand Results ("Defendant-Intervenor's Response"); and Plaintiffs' filed their Reply Brief on Defendant's Remand Determination ("Plaintiffs' Reply"). For the reasons set forth below, Commerce's Remand Redetermination is affirmed. This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2002).

---

[1] Familiarity with the court's decision in Kaiyuan I is presumed.

## II
## Background

Commerce published its notice of final results and partial rescission of the 1999-2000 review on September 19, 2002. Certain Cased Pencils from the People's Republic of China: Final Results and Partial Rescission of Antidumping Duty Administrative Review, 67 Fed. Reg. 48,612 (Jul. 25, 2002) as amended in Notice of Amended Final Results and Partial Rescission of Antidumping Duty Administrative Review: Certain Cased Pencils from the People's Republic of China, 67 Fed. Reg. 59,049 (Sept. 19, 2002) ("Final Results").

## A
## China First

In its initial questionnaire responses, China First stated that one of its shareholders, Shanghai Light Industry Group Co., Ltd. ("SLI")[2], had administrative responsibility for the protection of Three Star Stationary Industry Co., Ltd.'s ("Three Star") state-owned assets. China First also stated that while it was under the oversight of SLI, it was neither affiliated with Three Star nor coordinated prices, suppliers, customers, or business operations with Three Star. Commerce examined China First's and Defendant-Intervenor's claims regarding the relationship between China First and Three Star during the course of the administrative review.[3] Commerce concluded that "the degree of interaction between these two companies [was] far greater than . . . previously believed and the form this interaction takes corresponds very closely to Order of

---

[2] SLI is an arm of the Shanghai municipal government which owns 100 percent of Three Star and 33 percent of China First. Remand Redetermination at 2, n. 1.

[3] See Kaiyuan I, 343 F. Supp. 2d at 1292, for a complete discussion of Commerce's investigation.

3

Shanghai Light Industry Holding (Group), Order #(1997) 005 ("SLI Order #5")[4] as it was issued by SLI, indicating that the order may have been effectively implemented." Issues and Decision Memorandum for the Administrative Review of Certain Cased Pencils from the People's Republic of China; Final Results ("Issues and Decision Memorandum"), Comment 12 at 36.

In Kaiyuan I, the court remanded the case to Commerce to, inter alia, (1) articulate specifically the portions of the existing collapsing statutes and regulations which are applicable or inapplicable in the non-market economy ("NME") context; and (2) to provide the court with a clearly articulated methodology for collapsing companies in NME countries. 343 F. Supp. 2d at 1314-15.

**B**
**Guangdong**

During the course of the administrative review, Guangdong Provincial Stationery & Sporting Goods Import & Export Corp. ("Guangdong") responded to Commerce's questionnaires under protest, and requested that Commerce terminate its review because it only exported pencils produced by Three Star, and thus, claimed it was excluded by the order during the period of review. See Initiation of Antidumping Duty Investigations: Certain Cased Pencils From the People's Republic of China and Thailand, 58 Fed. Reg. 64,548 (Dec. 8, 1993). Guangdong had been excluded previously from the original antidumping order because Commerce determined

---

[4] SLI Order #5 is a document placed on the administrative record entitled "Order of Shanghai Light Industry Holding (Group), Order #(1997) 005" directing "China First to merge with Three Star, absorb all the capital of Three Star, and form a group company that would include Three Star." Remand Redetermination at 2. For a full discussion see Kaiyuan I, at 1293.

4

both that Guangdong had a zero margin and that it exported pencils produced by Three Star.[5]

Notice of Final Determination of Sales at Less Than Fair Value: Certain Cased Pencils from the People's Republic of China, 59 Fed. Reg. 55,625, 55,631 (Nov. 8, 1994) ("Final Determination"). The Final Determination did not include the identities of the referenced producers; however, the antidumping order issued on December 28, 1994, excluded the exporter/producer combination China First/China First, and Guangdong/Three Star. See Kaiyuan I, 343 F. Supp. 2d at 1296 n. 8. Commerce found in its Final Results that the China First/Three Star entity was distinct from the Three Star entity which was excluded from the antidumping order. Issues and Decision Memorandum, Comment 1 at 3.

In Kaiyuan I, the court remanded this issue to Commerce to (1) reevaluate Guangdong's rate in light of the court's decision that Commerce's collapsing methodology, as articulated, was not in accordance with the law; and (2) to reevaluate the application of the China-wide rate to Guangdong because Commerce effectively applied adverse facts to a participating and

---

[5] Commerce stated that Guangdong was excluded because under the NME methodology:

> the zero rate for each exporter is based on a comparison of the exporter's U.S. price and FMV based on the factors of production of a specific producer (which may be a different party). The exclusion, therefore, applies only to subject merchandise sold by the exporter and manufactured by that specific producer. Merchandise that is sold by the exporter but manufactured by other producers will be subject to the order, if one is issued. This is consistent with *Jia Farn* [Jia Farn Manufacturing Co., Ltd. v. United States, 17 CIT 187, 817 F. Supp. 969 (1993)] which held that exclusion of merchandise manufactured and sold by respondent did not cover merchandise sold but not manufactured by respondent. Therefore, merchandise that is sold by China First or Guangdong but produced by another producer is subject to suspension of liquidation at the "all others" cash deposit rate.

Final Determination, 59 Fed. Reg. at 55,631.

cooperative respondent. See Kaiyuan I, 343 F. Supp. 2d, at 1315.

**III**
**Arguments**

Defendant now says that it has complied with the court's remand instructions, articulated why it applied the applicable portions of the collapsing statute and regulations to a NME country, and provided the court with a clear methodology for collapsing China First and Three Star. Defendant's Response at 2. Defendant also states that it recalculated the facts available rate for Guangdong using a methodology which none of the parties contest. Id. at 3. Accordingly, Commerce argues that the Remand Redetermination should be sustained.

Plaintiffs continue to argue that (1) SLI Order #5 was never implemented due to objections from both China First's Board of Directors and Three Star's Employee Representative Committee; (2) China First never took over Three Star, and China First's president never acted in the role as Three Star's president during the POR; (3) there was no intertwining of the two companies' commercial or manufacturing operations; (4) any loans between the two entities were based on commercial terms; (5) the "'indirect supervision'" contract between China First and Three Star was limited and did not give China First control over Three Star's manufacturing or sales operations; and (6) the two companies products have "never been marketed jointly." Plaintiffs' Brief at 4-5. Plaintiffs thus conclude that Commerce's decision to collapse China First and Three Star is unsupported by substantial evidence.

Defendant-Intervenors support Commerce's analysis, arguing that Commerce correctly determined that China First and Three Star were affiliated and should continue to be treated as a single entity under the antidumping duty order. Defendant-Intervenor's Response at 1.

6

# IV
## Standard of Review

In reviewing a final antidumping duty decision, this court must decide whether Commerce's determination is in accordance with law and whether Commerce's conclusions are supported by substantial evidence on the record. See 19 U.S.C. § 1516(a)(b)(1)(B) (2000). Substantial evidence has been defined as "more than a 'mere scintilla,' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed. Cir. 2003); (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that "fairly detracts from the substantiality of the evidence." Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Where the evidence is reasonably reliable, the court "will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 404-05, 636 F. Supp. 961, 965 (1986), *aff'd* 810 F.2d 1137 (Fed. Cir. 1987). As such, Commerce's special expertise in administering the antidumping law entitles its decisions to deference from the courts. See, e.g., Micron Tech., Inc. v. United States, 117 F.3d 1386, 1394 (Fed. Cir. 1997); Torrington Co. v. United States, 68 F.3d 1347, 1351 (Fed. Cir. 1995).

# V
## Discussion

### A
### Commerce's Determination that Three Star and China First Should be Collapsed and Considered a Single Entity is in Accordance With the Law

In its remand, Commerce argues that it reasonably chose to apply the existing collapsing

7

regulation at 19 C.F.R. § 351.401(f)[6] to these NME companies as the approach does not conflict with the NME provisions of 19 U.S.C. § 1677(b). Remand Redetermination at 4. Furthermore, Commerce argues that the Court has found it permissible for Commerce to apply this regulation in the NME context. Remand Redetermination at 5, n. 4 (citing Hontex Enterprises, Inc. v. United States, 248 F. Supp. 2d 1323, 1343 (CIT 2003)) ("Hontex I"). As a result of its evaluation of the facts on the record, Commerce states that it reasonably determined that China First and Three Star were affiliated pursuant to 19 U.S.C. § 1677(33)(F). Remand Redetermination at 6.

China First does not dispute the legal standard used by Commerce to determine whether parties are affiliated or to collapse the companies. Plaintiffs' Brief at 3. Plaintiffs, however, argue that there is "overwhelming evidence" on the record that China First was not in operational control of Three Star during the period of review ("POR"). Id. at 1. The application of the specific facts of this case to the legal standard, Plaintiff argues, disregarded the specific non-market criterion required by Hontex I. Id. at 3. As a result, Plaintiffs claim that the Department's findings are unsupported by substantial evidence.

China First also argues that the Department erroneously concluded that there was the potential for manipulation of prices or production between China First and Three Star. Id. at 17.

---

[6] 19 C.F.R. § 351.401(f) provides that:

> the Secretary [of Commerce] will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and the Secretary concludes that there is a significant potential for the manipulation of price or production.

China First continues to argue that there was (1) no common ownership; (2) no sharing of board members or managerial employees during the POR; (3) no evidence of the intertwining of China First and Three Star's operations to the extent that sales information, production and pricing decisions, and production facilities were shared in any way. Id. at 18.

Defendant-Intervenors agree with the result reached by Commerce and support the methodology utilized by Commerce to collapse China First and Three Star. WIMA argues that China First has not demonstrated why the facts cited do not support the agency's conclusions, instead they merely argue that the facts can lead to an alternative interpretation. Defendant Intervenor's Response at 6. Defendant-Intervenor's assert that it is SLI which exerts common ownership over both China First and Three Star rather than a China First-Three Star link. Defendant-Intervenor's Response at 7. WIMA argues that because SLI owns 100 percent of Three Star and over 30 percent of China First, the two companies are affiliated pursuant to the criteria articulated in 19 U.S.C. § 1677(33)(F) and 19 C.F.R. § 351.102. Id.[7]

Defendant Intervenors argue that, taken together, all the facts on the record provide sufficient support for Commerce's determination that China First and Three Star are affiliated, warranting collapsing the two entities for purposes of the administrative review. Id. at 13. In addition, Defendant Intervenors support Commerce's finding that there was potential for price manipulation because Three Star was originally exempt from the antidumping duty order and this

---

[7] Defendant Intervenors list other actions which indicate that China First exercised control over Three Star including the indirect advisory role in supervising Three Star's inventory maintenance, facility condition, and worker supervision, as well as oversight for Three Star's annual accounting report and other company documents where China First affixed its seal indicating that it endorsed the report. Defendant Intervenor's Brief at 11. Taken together the totality of the evidence on the record supports Commerce's decision to collapse China First and Three Star.

provided an incentive for China First to manipulate production and pricing to take advantage of the exclusion. Id. at 14.

Commerce's decision to collapse China First and Three Star is supported by substantial evidence. As Commerce states in its Remand Redetermination, "'substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Defendant's Response at 4 (citing Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938); accord Matsushita Elec. Indus. Co. v. United States, 750 F. 2d 927, 933 (Fed. Cir. 1984)). The existence of substantial evidence is determined "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" Hontex Enterprises, Inc., v. United States, 342 F. Supp. 2d 1225, 1228 (CIT 2004) ("Hontex II") (citing Huaiyin Foreign Trade Corp. V. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984))).

In the instant matter, Commerce properly examined the Hontex I factors. Commerce's analysis focused on (1) whether the companies were affiliated through operational control between two persons; and (2) whether the control relationship presented the "significant potential for manipulation" of pricing or export decisions. Hontex II, 342 F. Supp. 2d, at 1231. In applying the Hontex I factors, Commerce based its analysis on the criteria set forth in 19 C.F.R. § 351.401(f), including

> i) the level of common ownership; ii) the extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and iii) whether [the firm's] operations are intertwined, such as thorough the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

Remand Redetermination at 4.

As a result, Commerce determined that the first step in deciding whether to collapse companies in the NME context was to determine if the companies were affiliated. Remand Redetermination at 5. Commerce focused its analysis on remand on the extent to which China First exerted control (either directly or indirectly) over Three Star as per the criteria identified in 19 U.S.C. § 1677(33) (2000).[8] Remand Redetermination at 6.

In examining whether China First and Three Star were affiliated, Commerce looked at several facts. Commerce relied on record evidence proving SLI Order #5 instructed "China First [to] have the 'leadership position to enact the program of capital reorganization of the two factories' and specifies that China First will manage Three Star during the capital

---

[8] 19 U.S.C. § 1677(33) states:

> The following persons shall be considered to be "affiliated" or "affiliated persons":
>
> (A) Members of a family, including brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.
> (B) Any officer or director of an organization and such organization.
> (C) Partners.
> (D) Employer and employee.
> (E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.
> (F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.
> (G) Any person who controls any other person and such other person.
>
> For purposes of this paragraph, a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person.

11

reorganization." Remand Redetermination at 6; Defendant's Response at 5. Commerce cited to record evidence that China First changed its name from China First Pencil Co., Ltd. to China First Pencil Group Co., Ltd., pursuant to SLI Order #05.[9] Remand Redetermination at 6. Commerce also examined China First's involvement in Three Star's operations, the movement of management between the two entities,[10] the series of loans between China First and Three Star,[11] and the joint marketing[12] of both companies' products in conjunction with the directive of SLI

[9] China First tries to refute the Department's claim that China First's name change from China First Pencil Co., Ltd. to China First Pencil Group Co., Ltd. was sufficient evidence that SLI Order #5 was effectuated. Plaintiffs instead argue that the name change was an effort to gain greater prestige as a group of companies in conjunction with a "wave of name changes" adding the word "Group" throughout China. Plaintiffs' Brief at 13. That claim is speculative at best and in any case does not call for this court to reject Commerce's view of the evidence.

[10] Plaintiffs claim the facts do not support a finding that China First and Three Star were under the control of the same person during the POR, because it was SLI and not China First that appointed Three Star's general manager. Plaintiffs' Reply at 6. As support, Plaintiffs claim that to the extent that China First's original appointee was President of Three Star, he held the position temporarily, his term ended prior to the POR, and China First did not appoint his successor. Id. at 5. Furthermore, China First claims that the contractual arrangement to provide Three Star with consultation services and "indirect guidance" was limited to safety, sanitation and yearbook issues and did not have the potential to "impact decisions concerning production, pricing, or cost of the subject merchandise." Plaintiffs' Brief at 11-12.

[11] Plaintiff argues that there were in fact no unreported loans outstanding from China First to Three Star which the Department discovered at verification. China First Plaintiffs' Post-Oral Argument Memorandum ("Plaintiffs' Post-Oral Argument Memorandum") (no page numbers). China First contends that it provide all the documentation necessary to demonstrate that the loans were repaid. Id. Defendant has presented substantial evidence that although China First did disclose several loans to the Department prior to verification, it discovered additional short-term interest free loans at verification. Defendant's Response to Plaintiffs' Memorandum at 2-4. Furthermore, China First failed to provide documentary support for the loans because they kept no documentation. Id. As a result, Commerce relied on these loans as "one component of the various factors considered by Commerce to warrant collapsing [China First] and Three Star." Id. at 4 (emphasis in original).

[12] Plaintiffs also argue that there is no evidence to suggest the joint marketing of China First's and Three Star's products. Plaintiffs' Brief at 14. However, contrary to the claims in

12

Order #5. Id. at 7; Defendant's Response at 6. It was not unreasonable, based on that substantial evidence, for Commerce to conclude that China First's involvement in Three Star's operations was substantial. Remand Redetermination at 6. Furthermore, since both China First and Three Star are pencil producers, Commerce reasonably concluded that the two entities had production facilities for similar or identical products which satisfied the requirements of 19 C.F.R. § 351.401(f). Remand Redetermination at 6; Defendant's Response at 6.

Commerce did not, as China First repeatedly argues, base its decision to collapse China First and Three Star on whether or not they *merged;*[13] rather, Commerce's determination was based upon substantial evidence which suggested that the companies were affiliated pursuant to

_____

Plaintiffs' Brief, Plaintiffs state in their Reply Brief that "pencils made by China First were displayed in a booth on one side of the common entrance and the pencils made by Three Star were displayed in the booth on the other side of the entrance." Plaintiffs' Reply at 13.

[13] China First also argues that pursuant to International Accounting Standard ("IAS") 27, "if a parent company has more than one subsidiary company the parent must (except in circumstances not relevant here) prepare consolidated financial statements" or the reasons for not consolidating must be disclosed. Plaintiffs' Post-Oral Argument Memorandum. China First further argues that under IAS 28 if an investor has significant influence over an associate, especially in cases where the investor owns more than 20 percent of the associate, the company must be reported in consolidated financial statements. Id. China First relies on these two IAS standards to assert that since Three Star is not listed in China First's financial statements, and because outside auditors certified China First's financial position, the two companies are not affiliated and therefore should not be collapsed. Id. Although the Department relied upon the IAS and home-country GAAP to verify whether the company records were maintained according to accepted accounting principles, it continues to assert there "is no basis for concluding that the IAS govern whether, for purposes of antidumping reviews, companies should be collapsed under Commerce's regulations." Defendant's Response to Plaintiffs' Memorandum at 5-6. Commerce reasonably concluded that "based upon the totality of the evidence that it was appropriate to collapse" China First and Three Star. Id. at 7. It correctly states that the "issue before the agency and [the] Court is not whether, for accounting purposes, Three Star should be considered [China First's] subsidiary or associate; rather, the question is whether Commerce's decision to collapse the two companies, pursuant to Commerce's regulations, is supported by substantial evidence. Id. (emphasis in original). Because the substantial evidence standard is more than amply satisfied here by the extensive evidence of interlocking control and operations, Defendant must prevail.

13

factors enumerated in the Department's own regulations. See 19 C.F.R. §351.401(f). As a result, Commerce determined that cumulatively, there was substantial evidence to indicate that the entities operations were intertwined to the extent that Three Star was effectively part of China First. Defendant's Response to Plaintiffs' Memorandum at 7.

Furthermore, Commerce properly relied on these same facts to determine whether or not there was a significant potential for manipulation. Remand Redetermination at 7. Commerce reasonably concluded that SLI Order #5 expressly directed China First to coordinate and take over Three Star's sales and purchasing which, since Three Star was originally part of the sales chain that was excluded from the antidumping order on pencils from China, created a "significant potential for the manipulation of price or production." Id. Commerce has thus properly determined, based upon this evidence, that the two companies' operations were sufficiently intertwined to indicate that there was the potential for manipulation of price, or production, and/or exporting decisions.

In the instant matter, Commerce has complied with the remand instructions of the court in Kaiyuan I, articulated the applicable portions of the existing collapsing statutes and regulations to the NME context, and provided a clearly articulated methodology for collapsing China First and Three Star. Therefore, Commerce's determination that China First and Three Star should be collapsed and assigned a single rate is supported by substantial evidence and is in accordance with law.

**B.**

**Commerce's Redetermination Regarding Guangdong's Margin Is in Accordance with the Law and Supported by Substantial Evidence**

Commerce was directed on remand to re-examine its application of the China-wide rate to Guangdong. See Kaiyuan I, at 1315. Commerce argues that in the Final Results, it applied the PRC-wide rate to Guangdong, not as an adverse facts available finding, but as the most appropriate rate as Guangdong sold pencils produced by a firm other than Three Star. Remand Redetermination at 8. Although Commerce argues that it is still appropriate to subject Guangdong's sales of pencils to the China-wide rate, Commerce states that it followed the court's direction and assigned Guangdong a non-adverse dumping margin pursuant to the facts available provision of the statute. Id. at 9 (citing Section 776(a) of the Act).

As non-adverse facts available, Commerce calculated a 13.91 percent margin for Guangdong based on the weighted-average of the margins calculated for cooperative respondents in the instant review. Id. Commerce supports its methodology on the grounds that the revised margin was based on contemporaneous and relevant data which represents the general current dumping margins. Id. Since the revised margin was based on calculated dumping margins, Commerce asserts that its methodology is supported by substantial evidence and in accordance with the law. Id.

Although Plaintiffs agree with the methodology utilized by Commerce, they argue that Commerce erred in assigning Guangdong a margin. Plaintiffs' Brief at 20. Plaintiffs object to the assigning of a margin to Guangdong on the basis that Commerce should not have collapsed China First and Three Star. Id. at 21.

15

Defendant-Intervenors do not contest the Department's methodology for calculating the margin for Guangdong as per the court's instructions. Defendant-Intervenors Brief at 15.

Commerce properly recalculated the margin assigned to Guangdong in accordance with the court's remand instructions. Commerce, using facts available, re-calculated a weighted-average margin based on verified, contemporaneous, and relevant data consistent with the court's discussion of the all-others rate in <u>Kaiyuan I</u>. Remand Redetermination at 9. Having found that Commerce properly collapsed China First and Three Star, and the parties having no dispute as to the methodology utilized, Commerce's redetermination of Guangdong's margin is in accordance with law.

## VI.

## Conclusion

For the foregoing reasons, Commerce's remand redetermination is hereby sustained.


    /s/ Evan J. Wallach
    Evan J. Wallach, Judge


Dated: August 23, 2005
New York, New York