WIELAND–WERKE AG, Langenberg Kupfer und Messingwerke GmbH KG and Metallwerke Schwarzwald GmbH, Plaintiffs,

v.

UNITED STATES, Defendant,

and

Hussey Copper Ltd., the Miller Company, Outokumpu American Brass, Revere Copper Products, Inc., International Association of Machinists and Aerospace Workers, International Union, Allied Industrial Workers of America (AFL–CIO), Mechanics Educational Society of America (Local 56), and United Steelworkers of America (AFL–CIO/CLC), Defendant–Intervenors.

Slip Op. 98–23.
Court No. 96–10–02297.

United States Court of International Trade.

March 6, 1998.

Arnold & Porter (Claire E. Reade, Richard A. Johnson, Ranjit Dhindsa), Washington, DC, for Plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Randi–Sue Rimerman), for Defendant; David W. Richardson, Intern. Office of Chief Counsel for Import Admin., of counsel.

Collier, Shannon, Rill & Scott (David A. Hartquist, Jeffrey S. Beckington, Mary T. Staley), Washington, DC, for Defendant–Intervenors.

### MEMORANDUM AND ORDER

WALLACH, Judge.

## I

### PRELIMINARY STATEMENT

Plaintiffs, Wieland–Werke AG, Langenberg Kupfer–und–Messingerwerke GmbH, and Metallwerke Schwarzwald GmbH (collectively "Wieland") contest certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final determination in *Brass Sheet and Strip From Germany; Final Results of Antidumping Duty Administrative Review and Determination Not To Revoke in Part,* 61 Fed.Reg. 49,727 (Sept. 23, 1996) ("*Final Results*"), as unsupported by substantial evidence and contrary to law. They claim that Commerce was required to revoke the Antidumping Duty Order as it applied to Wieland.

Commerce admits that it failed to provide the parties with an opportunity to comment on some of the information upon which it relied in making its determination not to revoke the Antidumping Duty Order. Consequently, Commerce asks for a remand in order to provide the parties with an opportunity to comment, and to enable Commerce to reconsider its determination in light of any comments received. For the reasons that follow, the Court grants Commerce's request. This Court has jurisdiction under 19 U.S.C.

§ 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

## II

## BACKGROUND

The *Final Results* at issue are the eighth administrative review of the Antidumping Duty Order concerning brass sheet and strip from Germany. *See Antidumping Duty Order; Brass Sheet and Strip from the Federal Republic of Germany,* 52 Fed.Reg. 6997 (Mar. 6, 1987) ("Order"). That Order was the result of an antidumping investigation initiated at the request of Defendant–Intervenors Hussey Copper, Ltd., The Miller Company, Outokumpu American Brass, Revere Copper Products, Inc., International Association of Machinists and Aerospace Workers, International Union, Allied Industrial Workers of America (AFL–CIO), Mechanics Educational Society of America (Local 56), and United Steelworkers of America (AFL–CIO/CLC) (collectively "Petitioners"), among others not participating in this appeal. *Final Determination of Sales at Less Than Fair Value; Brass Sheet and Strip From the Federal Republic of Germany,* 52 Fed.Reg. 822 (Jan. 9, 1987).

At Wieland's request, Commerce initiated this review for the purpose of determining the dumping margin and considering whether the Order should be revoked as it applied to Wieland. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 60 Fed.Reg. 19,017 (Apr. 14, 1995). Previously, Commerce had found that Wieland had a *de minimis* margin in both the sixth and seventh administrative reviews. *See Brass Sheet and Strip From Germany; Final Results of Antidumping Duty Administrative Reviews,* 60 Fed.Reg. 38,542, 38,546 (Jul. 27, 1995) and *Brass Sheet and Strip From Germany; Final Results of Antidumping Duty Administrative Review,* 60 Fed.Reg. 38,031, 38,035 (Jul. 25, 1995), respectively.

On May 6, 1996, Commerce issued its preliminary results, finding a *de minimis* dumping margin and indicating that it intended to grant Wieland's request to revoke the Order. *Brass Sheet and Strip From Germany; Preliminary Results of Antidumping Duty Administrative Review and Notice of Intent To Revoke Order in Part,* 61 Fed.Reg. 20,214 (May 6, 1996) ("*Preliminary Results*"). After the *Preliminary Results* were issued, Petitioners expressed concern about the intent to revoke and submitted new factual information on the issue of whether it was likely that Wieland would resume dumping. Commerce rejected that information as untimely, but subsequently collected additional information on its own. That data included the information untimely submitted by Petitioners and rejected by Commerce pursuant to 19 C.F.R. § 353.31(a)(3) (1996). *See* Final Results Analysis Mem. at 3, Administrative Record ("AR"), Fiche 14, Fr. 1. Commerce had rejected two articles (*Boerson Zeitung* from March 5, 1996 and *Handelsblatt* from March 7, 1996) as well as statistical information regarding U.S. imports of brass, and then gathered the same information. *See* June 5, 1996 Pet. Case Brief, at appendix 1 to Def.-Int.'s Oppos. To Plaintiff's Mot. for Jdmt on the Agency Record and Final Results Analysis Mem., Appendix 2, AR, Fiche 14, Fr. 1. Commerce also obtained material that it had not previously rejected as untimely. Those articles were from the following publications: *Metal Bulletin, Purchasing, Metal Statistics, American Metal Market,* and *1985 U.S. Foreign Trade Highlights. Final Results,* 61 Fed.Reg. at 49730–31; Final Results Analysis Mem., Appendix 2, AR, Fiche 14, Fr. 1.

Although Commerce used this information in reaching its *Final Results,* it failed to provide the parties with an opportunity to comment upon it. Subsequently, even though the investigation resulted in a zero dumping margin for Wieland, Commerce did not revoke the Order with respect to Wieland. *Final Results,* 61 Fed.Reg. at 49,732. Commerce was not satisfied that there was no likelihood that Wieland would resume dumping if the order were revoked. *Id.*

## III

## DISCUSSION

### A

#### Standard of Review

■ In reviewing a final ITA determination, this Court will "hold unlawful any deter-

mination, finding, or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). "Substantial evidence 'is something less than the weighing of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent the administrative agency's finding from being supported by substantial evidence.'" *Matsushita Elec. Indus. Co., Ltd. v. United States,* 3 Fed. Cir. (T) 44, 51, 750 F.2d 927, 933 (1984) (quoting *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)). The Court is not to weigh the quality or quantity of the evidence or to reject finding on grounds of a "differing interpretation" of the record. *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir. 1990).

■ In reviewing an agency's construction of the statute that the agency administers, the Court's initial inquiry is to determine "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Nat. Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44, 104 S.Ct. 2778. Consequently, "[t]he court will defer to the agency's construction of the statute as a permissible construction if it 'reflects a plausible construction of the plain language of the statute[s] and does not otherwise conflict with Congress' express intent.'" *Torrington Co. v. United States,* 82 F.3d 1039, 1044 (Fed.Cir.1996) (citations omitted).

## B

**Commerce Applied The Correct Legal Standard Because The Phrase "no likelihood of" Has The Same Meaning As "not likely to"**

■ Wieland's primary argument is that the phrase "no likelihood" sets a different and higher standard than the words "not likely to". As a matter of proof, Wieland has failed to carry its burden to establish that proposition, and as a matter of law, it fails under standard rules of statutory construction.

The statute provides that "[t]he administering authority may revoke, in whole or in part, ... an antidumping duty order or finding, ... after [a periodic review of amount of duty]...." 19 U.S.C. § 1675(d)(1) (1994). Commerce has implemented regulations in accordance with the broad discretion granted to it by the statute. Commerce's regulations provide:

> The Secretary may revoke an order in part if the Secretary concludes that:
>
> (i) One or more producers or resellers covered by the order have sold the merchandise at not less than foreign market value for a period of at least three consecutive years;
>
> (ii) It is not likely that those persons will in the future sell the merchandise at less than foreign market value; and
>
> (iii) For producers or resellers that the Secretary previously has determined to have sold the merchandise at less than foreign market value, the producers or resellers agree in writing to their immediate reinstatement in the order, as long as any producer or reseller is subject to the order, if the Secretary concludes under § 353.22(f) that the producer or reseller, subsequent to the revocation, sold the merchandise at less than foreign market value.

19 C.F.R. § 353.25(a)(2)(i) (1996). Thus, in addition to three consecutive years of zero or *de minimis* dumping margins and certification that they will agree to the reinstatement of the order if necessary, Commerce must be satisfied that the respondents are not likely to dump in the future before it will revoke the Order.

The parties agree that Wieland satisfied the first and third requirements, but hotly contest whether Wieland is likely to dump again, *i.e.,* the second requirement. Wieland claims that Commerce used the incorrect legal standard with regard to this issue. In refusing to revoke the Order, Commerce stated: "the Department must ... be satisfied that there is no likelihood of resumption

of dumping ... before revoking an order ... (19 C.F.R. 353.25(a)(2)(ii)).'' *Final Results,* at 49730. Wieland claims that ''[t]his language requires the Department to be *absolutely certain* that no dumping will recur [in contravention to 19 C.F.R. 353.25(a)(2)(ii) ].'' Plaintiffs' Mem. In Supp. of Mot. for Jdmt at 4 (emphasis in original). According to Wieland, this is a different standard than that set forth in the statute and regulation allowing Commerce the discretion to revoke a dumping order when it is ''not likely that'' those persons will in the future engage in dumping. Wieland's argument fails.

In 1989, Commerce amended the regulations to change the language in 19 C.F.R. § 353.25(a)(2)(ii) from ''no likelihood'' to ''not likely'' to engage in future dumping. *Compare* 19 C.F.R. § 353.54(a) (1988) (no likelihood), *with* 19 C.F.R. § 353.25(a) (1996) (not likely). Commerce never offered an explanation for the change in wording. However, in discussing the comments it received in response to the proposed change, Commerce stated: ''[t]he statute gives the Secretary broad discretion in deciding when to revoke an order. The Secretary has determined that a pre-condition of revocation under this paragraph is that the Secretary be satisfied that there is no likelihood of future sales at less than foreign market value.'' *Antidumping Duties; Final Rule,* 54 Fed.Reg. 12,742, 12,758 (Mar. 28, 1989) (revising 19 C.F.R. Part 353). Subsequently, Commerce has ''used the phrases 'not likely' and 'no likelihood' interchangeably, and consistently failed to draw a legal distinction between the two....'' *Notice of Final Results of Antidumping Duty Administrative Review and Determination Not To Revoke Order In Part; Dynamic Random Access Memory Semiconductors of One Megabyte or Above From The Republic of Korea,* 62 Fed.Reg. 39,809, 39,813 (July 24, 1997) (''*DRAMS From Korea* '')[1]; *see Frozen Concentrated Orange Juice From Brazil; Final Results and Termination in Part of Antidumping*

*Administrative Review; Revocation in Part of the Antidumping Duty Order,* 56 Fed. Reg. 52,510, 52,511 (Oct. 21, 1991) (Commerce stated ''[w]e conclude from the evidence in the record that there is no likelihood of future sales at less than foreign market value....'').

Commerce's use of the phrases ''no likelihood'' and ''not likely'' is in accordance with the normal usages of the English language because these phrases mean the same thing. *The Oxford English Dictionary* defines ''likelihood'' as ''the quality or fact of being likely or probable''. *Id.* at 948, vol. VIII (2d ed.1989). ''Likely'' is defined as ''[h]aving an appearance of truth or fact; that looks as if it would happen, be realized, or prove to be what is alleged or suggested; probable.'' *Id.* at 949. *Webster's Third New International Dictionary* defines ''likelihood'' as ''probability'' and ''likely'' as ''of such a nature or so circumstanced as to make something probable''. *Id.* at 1310 (1993). Thus, the phrases at issue have the same meaning and can be used interchangeably. Commerce did not err in the legal standard it applied in the *Final Results.*[2]

### C

### This Case Is Remanded To Commerce To Allow The Parties To Comment On Certain Information

█ Wieland also argues that Commerce's use of information that was obtained after the preliminary results were issued is contrary to law and that such information should be stricken from the record. Wieland claims that the Court should order Commerce to revoke the Order as it applies to Wieland because there is support on the record for revocation. Commerce admits that it did rely on information on which the parties were not given an opportunity to comment. Commerce requests a remand to rectify this error. The Court rejects Wieland's argument and remands to allow the parties to

---

**1.** Plaintiff points out that *DRAMS From Korea* was issued after the *Final Results.* Consequently, Plaintiff argues that Commerce's statements in *DRAMS From Korea* are simply a post-hoc rationalization of the *Final Results.* However, *DRAMS From Korea* does not set forth a new standard in revocation cases but simply summarizes Commerce's view that there is no legal

difference between the phrases ''not likely to resume dumping'' and ''no likelihood of resumption of dumping''.

**2.** At oral argument, held on January 15, 1998, Wieland's counsel conceded that these phrases both mean the same thing.

comment on that information and for Commerce to reconsider its decision not to revoke the Order in view of the comments.

The statute provides that the record for review by this Court is, *inter alia:* "a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding...." 19 U.S.C. § 1516a(b)(2)(A)(i) (1994). In collecting information, Commerce "may request any person to submit factual information at any time during the proceeding." 19 C.F.R. § 353.31(b)(1) (1996).[3] The statute provides, *inter alia:*

> [t]he administering authority ... before making a final determination ... shall cease collecting information and shall provide the parties with a final opportunity to comment on the information obtained by the administering authority ... upon which the parties have not previously had an opportunity to comment....

19 U.S.C. § 1677m(g) (1994). Thus, Commerce has great discretion as to how and when it collects information so long as it gives the parties an opportunity to comment on that information.

Interested parties may also give information to Commerce. However, Commerce's regulations provide: "[t]he Secretary will not consider in the final determination or the final results, or retain in the record of the proceeding, any factual information submitted after the applicable time limit...." 19 C.F.R. § 353.31(a)(3) (1996). Commerce must provide an opportunity for the parties to comment on information submitted to it before it makes a determination. 19 U.S.C. § 1677m(g) (1994).

The Court must decide whether Commerce may strike untimely information submitted to it by a party, gather, *inter alia*, the identical information, and then rely upon the information in the final decision without giving the parties the opportunity to comment on the information. Here, petitioners attempted to add information to the record after the dead-line for submission of factual information. While Commerce did strike this information from the record, it then gathered the same information as well as other information and relied on it in the *Final Results* without giving the parties an opportunity to comment on it. Final Results Analysis Mem. at 3, AR, Fiche 14, Fr. 1; *see Final Results,* 61 Fed. Reg. at 49730–31.

■ "Antidumping proceedings are investigatory, not adjudicatory." *Timken Co. v. United States,* 10 CIT 86, 92, 630 F.Supp. 1327, 1333 (1986) (citations omitted); *see NEC Corp. v. United States,* 978 F.Supp. 314, 329 (CIT 1997).[4] The statute clearly permits Commerce to obtain information on its own initiative rather than just relying on information submitted to it. *See* 19 U.S.C. § 1516a(b)(2)(A) and § 1677m(g) (1994). As a result, Commerce has an obligation to investigate by gathering information either on its own initiative or through submissions to it. *See Freeport Minerals Co. v. United States,* 4 Fed. Cir. (T) 16, 21, 776 F.2d 1029, 1034 (1985) (Commerce erred in refusing to require respondents to submit current information); *see also Rhone–Poulenc v. United States,* 927 F.Supp. 451, 456 (CIT 1996) ("Commerce's failure to perform an independent investigation of the facts related to this issue falls short of its statutory duty to investigate antidumping cases and assign fair antidumping margins").

■ While at first blush it is troubling that Commerce gathered and relied upon the same information it was not allowed to consider when submitted by petitioner, in the absence of bad faith or clear governmental misconduct the statute's broad grant of discretion to Commerce in conducting investigations permits this action. Thus, although Commerce has promulgated regulations requiring it to strike untimely information submitted to it, this does not restrict Commerce's ability to gather the same information on its own initiative.

Nevertheless, it was improper for Commerce not to allow the parties to comment on

---

**3.** Accordingly, the Court rejects Wieland's argument that Commerce could only request information from the parties.

**4.** *Cf. Monsanto Co. v. United States,* 12 CIT 937, 947, 698 F.Supp. 275, 283 (1988) ("Unfair trade proceedings are sometimes described as investigatory in nature, but the agency actions which are being reviewed might be best described as quasi-adjudicatory, quasi-investigatory.").

this information. The Court remands to correct this oversight.[5] Consequently, the Court cannot reach the issue of whether there is substantial evidence on the record to support the conclusion that the Order should not be revoked.

## IV

### CONCLUSION

For the foregoing reasons, this matter is remanded to Commerce with instructions that Commerce shall allow the parties to comment upon information relevant to the issue of the partial revocation. If necessary, Commerce shall adjust its determination. Commerce has sixty (60) days to conduct the remand proceeding. Commerce's determination in all other respects is sustained.

### ORDER

This case having come before the Court for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED AND DECREED that Defendant's request for a remand is granted; and it is further

ORDERED, ADJUDGED AND DECREED that *Brass Sheet and Strip From Germany; Final Results of Antidumping Duty Administrative Review and Determination Not To Revoke In Part*, 61 Fed.Reg. 49,727 (Sept. 23, 1996), is remanded to the Department of Commerce to permit the parties to provide comments and rebuttal comments upon the information obtained by the Department of Commerce regarding the likelihood of resumption of dumping issue, and for the Department of Commerce to take those comments into consideration in its remand results; and it is further

ORDERED, ADJUDGED AND DECREED that the Department of Commerce shall have 60 days from the date of this Order in which to file the remand results with the Court; and it is further

ORDERED, ADJUDGED AND DECREED that, in the event that they are dissatisfied with the remand results, plaintiffs shall have 20 days from the date the remand results are filed in which to inform the Court that they desire the Court to enter a scheduling order; and it is further

ORDERED, ADJUDGED AND DECREED that the determination of the Department of Commerce is sustained in all other respects; and it is further

ORDERED, ADJUDGED and DECREED that all parties shall review the Memorandum and Order and notify the Court on or before March 27, 1998 whether any information contained in the Memorandum and Order is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter. If a party determines that no information needs to be deleted, that party shall so notify the Court on or before March 27, 1998.

---

**5.** The Court rejects Wieland's request that it be allowed to submit facts to rebut the information relied upon by Commerce. The statute allows the parties to comment on information collected by Commerce before a decision is issued by Commerce, but specifically provides that "[c]omments containing new factual information shall be disregarded." 19 U.S.C. § 1677m(g) (1994).