Slip Op. 06-34

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                          :

CHINA FIRST PENCIL CO., LTD., et al.,    :
                                          :

           Plaintiffs,           :

                                          :      Before:           WALLACH, Judge

        v.                  :      Consol. Court No.:   04-00242

                                          :

UNITED STATES,                  :

                                          :      **PUBLIC VERSION**

           Defendant,         :

                                          :

and                              :

                                          :

SANFORD CORPORATION, et al.,      :

                                          :

           Defendant-Intervenors.   :

_____:

[United States Department of Commerce's Final Results on Certain Cased Pencils from China
are AFFIRMED]

                                        Dated: March 7**,** 2006

Lafave & Sailer LLP, (Francis J. Sailer) for Plaintiffs China First Pencil Co., Ltd., Orient
International Holding Shanghai Foreign Trade Co., Ltd., and Shanghai Three Star Stationery
Industry Corp.

DeKieffer & Horgan, (John J. Kenkel) for Plaintiff Shandong Rongxin Import & Export Co., Ltd.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson,
Deputy Director; Michael Panzera, Trial Attorney, Commercial Litigation Branch, Civil
Division, U.S. Department of Justice; and Ada E. Bosque, Attorney, Office of Chief Counsel for
Import Administration, U.S. Department of Commerce, of Counsel, for Defendant United States.

Neville Peterson LLP, (George W. Thompson) for Defendant-Intervenors Sanford Corporation,
Musgrave Pencil Company, Rose Moon Inc., and General Pencil Company.

## OPINION

**Wallach, Judge:**

## I
## Introduction

This matter comes before the court following an order granting a voluntary remand dated September 20, 2004, to the United States Department of Commerce ("Defendant", "the Department", or "Commerce"). On December 20, 2004, the Department filed its Final Results of Voluntary Redetermination ("Remand Redetermination"). On February 17 and 18, 2005, Plaintiffs, Shandong Rongxin Import & Export Co., Ltd. ("Shandong") and China First Pencil, Co., Ltd., ("China First") (collectively "Plaintiffs") filed their responses, respectively, and on May 18, 2005, Defendant-Intervenors, Sanford Corporation, Moon Products, Inc., General Pencil Company, and Musgrave Pencil Company (collectively "Defendant-Intervenors") filed their reply. Also on May 18, 2005, Defendant filed a Motion for Judgment Upon the Administrative Record and Response to Plaintiffs' Comments Upon the Remand Results ("Defendant's Motion and Response"). On July 22, 2005, Plaintiffs filed their Opposition to Defendant's Motion and Response. On August 11, 2005, Defendant and Defendant-Intervenors filed their respective replies, and on September 12, 2005, Plaintiffs filed their respective sur-replies. Oral argument was held on January 27, 2006. This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2002).

## I
## Background

Commerce published its notice of final results and partial rescission of the 2001-2002 review on May 21, 2004. Certain Cased Pencils from the People's Republic of China; Final

Results and Partial Rescission of Antidumping Duty Administrative Review, 69 Fed. Reg. 29,266 (May 21, 2004) ("Final Results"). These results were challenged by Plaintiffs and were remanded pursuant to Commerce's request to allow it to make a Voluntary Remand Redetermination. The court is now reviewing the issues arising from these Final Results and the Remand Redetermination.

### III
### Arguments

First, Commerce argues that China First Pencil Co., Ltd. ("CFP") and Three Star Stationery Industry Corp. ("Three Star") should remain collapsed on the basis that none of the circumstances from the previous review have changed sufficient to warrant a different determination. Second, Commerce argues that its use of Indian import statistics from 2001, adjusted for inflation, on remand is reliable and results in an accurate calculation of the surrogate value of pencil cores. Third, Commerce contends that China First did not timely challenge Commerce's decision to reject certain acquisition costs during the administrative process and consequently cannot contest the determination at this juncture.

China First asserts that the Department erroneously found that China First is affiliated with Three Star and Commerce's decision to collapse the two entities has no basis in fact or law. China First also asserts that the Department erroneously declined to accept market economy based acquisition costs and its determination was unsupported by substantial evidence. Finally, all Plaintiffs argue that the Department incorrectly utilized a single value derived from Indian import statistics for black and color pencil cores as the surrogate value for pencil cores.

## IV
## Standard of Review

In reviewing a final antidumping duty decision by Commerce, "the Court of International Trade must sustain 'any determination, finding, or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). Substantial evidence has been defined as "'more than a mere scintilla,' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed. Cir. 2003); (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Where the evidence is reasonably reliable, the court "will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." Ceramica Regiomontana, S.A., et al., v. United States, 10 CIT 399, 404-05, 636 F. Supp. 961, 966 (1986), *aff'd* 810 F.2d 1137 (Fed. Cir. 1987).

## V
## Discussion

## A
## Commerce's Determination that Three Star and China First Should be Collapsed and Considered a Single Entity is in Accordance With the Law

Commerce, in the instant review, continued to collapse China First and Three Star because there was sufficient record evidence to demonstrate that the operations of the two entities were intertwined and that there continued to be the potential to manipulate price and/or production. Commerce argues that once it has made a determination to collapse two entities in an administrative proceeding, the burden is on the parties to provide evidence that circumstances

4

have changed sufficient to warrant making an alternate determination. Defendant's Motion and Response at 23; Defendant's Reply at 2. Commerce states that in this review, there was insufficient evidence submitted by China First to refute Commerce's determination that China First and Three Star were affiliated and that there was significant potential for the manipulation of price or production. Id.

Defendant says that "'the record evidence in the instant administrative review does not demonstrate that there has been a change in the relationship between [China First] and Three Star such that the companies should no longer be treated as a single entity for its antidumping analysis.'" Defendant's Response at 26 (quoting Issues and Decision Memorandum, at 18); see Defendant's Reply at 5. Commerce also asserts that China First assumes that Commerce's determination is based solely upon whether or not the two companies actually merged, when in fact Commerce's analysis focused on the level of management oversight, operational oversight, and financial oversight by China First over Three Star and the extent to which there was the potential to manipulate price and/or production. Id. at 27; Defendant's Reply at 9-10. According to Defendant, these facts have not changed and therefore Commerce continued to collapse China First and Three Star. Id. As a result, Defendant urges the court to sustain the Final Results in its entirety as based upon substantial evidence and in accordance with law.

Defendant-Intervenors support Commerce's decision to continue to collapse China First and Three Star on the grounds that there continues to be substantial influence over Three Star by China First. Defendant-Intervenors Brief at 12-16. Defendant-Intervenors claim that China First and Three Star continue to share a common owner, Shanghai Light Industries; that there are still common board members and directors; and that there continues to be the potential for the

5

manipulation of price and/or production. Id. As a result, Defendant-Intervenors argue that Commerce continues to present sufficient evidence to collapse the two entities and utilized the proper standard of review to reach its determination. Id. at 17.

China First still claims that it is not affiliated with Three Star, and that Commerce's decision to collapse the two entities is not supported by substantial evidence nor in accordance with law. Plaintiffs' Opposition to Defendant's Motion for Judgment Upon the Administrative Record ("China First Opposition") at 16. China First claims that there is no involvement of China First in Three Star's operations, there was no merger of the two entities, and the Department's continued reliance upon facts in a prior review is unsupported by substantial evidence. Id. at 17-29; Plaintiffs' Rebuttal Brief at 2-3. China First also claims that it did not submit "any records to substantiate its position because it had none to demonstrate a non-event" but "the Department did have before it all (and reviewed some at its own choosing) of China First's corporate governance records, it refused to accept the accounting records that were designed to objectively demonstrate that the two companies had virtually no commercial interaction." Plaintiffs' Rebuttal Brief at 2.

Commerce's decision to continue to collapse China First and Three Star is supported by substantial evidence and is in accordance with law. Commerce found that China First and Three Star continue to have intertwined operations and that there was an "absence of any evidence upon the record that would justify departing from Commerce's determination in the previous review to collapse [China First] and Three Star." Defendant's Motion and Response at 30. More importantly, China First failed to meet its burden of establishing that the facts and circumstances had changed sufficiently to warrant a re-examination of Commerce's decision. Defendant's

6

Reply at 2 (citing Certain Cold-Rolled and Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea; Notice of Preliminary Results of Antidumping Duty Administrative Review, 66 Fed. Reg. 47,163, 47,166-67 (September 11, 2001), and subsequent Notice of Final Results of Antidumping Duty Administrative Reviews: Certain Cold-Rolled and Corrosion-Resistant Carbon Steel Flat Products from Korea, 67 Fed. Reg. 11,976 (March 18, 2002); Certain Corrosion Resistant Carbon Steel Flat Products from Canada: Preliminary Results of Antidumping Duty Administrative Review, 68 Fed. Reg. 53,105, 53,106 (September 9, 2003)).

This court in Kaiyuan Corp. v. United States, 391 F. Supp. 2d 1317, 1321-25 (CIT 2005), conducted an exhaustive analysis of Commerce's methodology and reasoning for collapsing China First and Three Star. Plaintiffs' arguments show that none of the circumstances justifying collapsing have changed. Furthermore, under the substantial evidence standard of review applicable in administrative law cases, Commerce has properly explained its reasoning and also provided a reasonable explanation for continuing to collapse these two entities. Consolidated Edison v. NLRB, 305 U.S. at 229; accord Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984) (explaining that "substantial evidence" is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion). As the case law states, the existence of substantial evidence is determined "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" Hontex Enterprises, Inc., v. United States, 342 F. Supp. 2d 1225, 1228 (CIT 2004) (citing Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984))). This court will not second guess reasonable decisions supported by substantial evidence. Commerce's

7

determination to collapse China First and Three Star is affirmed.

**B**

**Commerce's Decision to Utilize Indian Import Statistics Adjusted for Inflation is in Accordance with Law**

Plaintiffs in this proceeding contested the Department's surrogate value ascribed to pencil cores in the Final Results, and the Department conducted further analysis of its valuation of pencil cores pursuant to a voluntary remand. In its Remand Redetermination, Commerce argues that the decision to use data from the Monthly Statistics of the Foreign Trade of India ("MSFTI") from 2001, adjusted for inflation, to calculate a surrogate value for pencil cores in the instant review is supported by substantial evidence and is in accordance with law. Remand Redetermination at 5; Defendant's Motion and Response at 32. Commerce argues that it requested a remand to re-examine its original determination because it noted that the value of black and color cores in Final Results differed significantly from the price derived from the same source covering the previous period of review ("POR"). Remand Redetermination at 4. In order to examine this difference in data, Commerce, on remand, sought additional information to determine whether the 2002 MSFTI data was the most reliable source of data and concluded that in fact it was not. Id.; Defendant's Motion and Response at 31.

Commerce states that since it was unable to obtain price quotes from India, it obtained a U.S. price quote to use as a comparison to MSFTI data and test its reliability and accuracy. Id. at 5. After examining the data and noting that the U.S. price quote was close to the 2001 MSFTI value for black cores, Commerce argues that it found the 2001 data more accurate than the 2002 data which resulted in a price nearly twice that of the U.S. price quote. Remand Redetermination

8

at 5.  Commerce claims that it also tested the reliability of the 2001 MSFTI data by comparing it to data from Indonesia and the Philippines for the same time period. Defendant's Motion and Response at 38.  Commerce states after testing the reliability of the data it then used the 2001 MSFTI data, adjusted for inflation, as the surrogate value for black cores. Id. at 5.  Concurrently, it examined whether MSFTI data was comparable to the U.S. price quote for color cores and found that neither the 2001 nor the 2002 data was comparable. Id.  Commerce argues that it made a reasonable decision to calculate a ratio of the difference between black and color cores based upon the U.S. price quote and applied this ratio to the 2001 MSFTI data, adjusted for inflation, to calculate a surrogate value for color cores to use in its margin calculation. Id.

Defendant-Intervenors argue that the Department's original core valuation determination was supported by substantial evidence and in accordance with law and therefore there was no need for the Department to re-examine its decision and request a voluntary remand. Defendant-Intervenor's Response at 1-2; Defendant-Intervenors' Brief at 17.  However, Defendant-Intervenors support the Department's decision to use 2001 MSFTI data in the Remand Redetermination because other data on the record was not a reliable basis upon which to calculate a surrogate value for pencil cores. Id. at 7-9.  Defendant-Intervenors also support Commerce's decision to examine U.S. price quotes as a benchmark to determine whether or not 2001 MSFTI data was reliable on the grounds that it was reasonable and in accordance with law. Defendant-Intervenors Brief at 25.

Plaintiffs assert that Commerce's use of 2001 MSFTI data is arbitrary, capricious, an abuse of discretion, is unsupported by substantial evidence, and is contrary to law. China First Comments at 12.  China First claims that it was illegal for the Department to seek corroborating

9

U.S. price quotes to test the reliability of the 2001 MSFTI data and then calculate surrogate values for both black and color pencil cores. Id. China First claims that "it is purely arbitrary and wholly irrational to say that one number corroborates another just because they are close in value without knowing what they represent." Id. at 11. Specifically, Plaintiffs claim that the Department was not authorized to open the administrative record and collect new information, i.e. the U.S. price quotes, and its use of this information violated the intent of the remand. Id. at 15; Plaintiff's (Shandong) Comments on Final Results of Voluntary Redetermination Pursuant to Court Order ("Shandong Comments") at 2; Plaintiff Shandong Rongxin Import & Export Co. Ltd.'s Opposition to Defendant's Motion for Judgment Upon the Agency Record ("Shandong Opposition") at 9.

The Department's decision to use 2001 MSFTI data, adjusted for inflation, to calculate surrogate values for black and color pencil cores is supported by substantial evidence and is in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(2004). Commerce's analysis of the surrogate value data demonstrated that it acted reasonably and is therefore entitled to deference. Ceramica Regiomontana, 10 CIT at 404-05; See, e.g., Micron Tech., 117 F.3d at 1394; Torrington, 68 F.3d at 1351. On remand, Commerce first examined U.S price quotes to test the reliability of the 2001 MSFTI data. Defendant's Motion and Response at 33. Second, it compared the MSFTI data to Philippine and Indonesian data for the same 2001 time period. Id. at 38. Only after conducting an exhaustive analysis did Commerce conclude that the 2001 MSFTI data was reasonable and reliable. Id. at 33-40.

China First and Shandong's claims that Commerce exceeded the authority of the Remand Order is without merit. The textual language of the Motion for Voluntary Remand contemplated

10

the use of additional data to test the validity of the 2001 MSFTI data and the court granted Commerce its remand countenancing this possibility. Order Granting Defendant's Partial Consent Motion for Voluntary Remand, dated September 20, 2004. More importantly, Commerce did not directly apply the additional information; it used it as a means of corroborating existing record evidence which it ultimately used in its surrogate value calculations. Defendant's Motion and Response at 36-38. Commerce properly acted to ensure an accurate result; such action is entirely appropriate in complex and imprecise non-market economy cases such as the one at hand. Baoding Yude Chem. Indus. Co., Ltd., et al. v. United States, 25 CIT 1118, 1122, 170 F. Supp. 2d 1335, 1340 (2001) (quoting Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1377 (Fed. Cir. 1999)); see Sigma Corp. v. United States, 117 F.3d 1401, 1407 (Fed. Cir. 1997); see also Lasko Metal Prods., Inc. v. United States, 43 F.3d 1442, 1446 (Fed. Cir. 1994). Commerce's Remand Redetermination is supported by substantial evidence and is in accordance with law.

## C
### China First Failed to Exhaust Its Administrative Remedies and Cannot Challenge Commerce's Decision Not to Utilize Certain Market-Economy Acquisition Costs

China First argues that it would be futile to exhaust its administrative remedies. China First failed to challenge Commerce's decision to use a surrogate value for Three Star's pencil cores rather than the reported market-economy acquisition costs during the administrative comment period following publication of the Preliminary Results and instead chose to challenge the issue on appeal. China First claims that Three Star provided verified data supporting its market-economy purchases of black and color pencil cores and the Department should have used these values and not surrogate values to calculate the margin. China First Comments at 32; China

First Opposition at 29. Plaintiffs claim that the Department's verification outline listed market-economy purchases as an item to be verified, the Department verified these purchases, yet failed to utilize this information on the basis that it was not a "complete set of *all* Three Star purchases, but only a representative sample." China First Opposition at 32 (emphasis in original). Plaintiffs further claim that the Department's use of a surrogate value for Three Star's pencil cores is effectively adverse facts available, which is not warranted. Id. at 35.

Commerce argues that China First's challenge to the Department's determination not to utilize certain market-economy acquisition costs is not properly before the court because China First failed to exhaust its administrative remedies. Defendant's Motion and Response at 42. Commerce states that China First failed to challenge the Department's decision during the comment period following the issuance of the Preliminary Results, and therefore cannot do so at this juncture. Id. at 42-43. Defendant also argues that China First cannot challenge this decision in the context of the "ministerial error" provision of the statute and regulations because this does not constitute a ministerial error as defined by those provisions. Id. at 43. Commerce explains that its rejection of China First's supposed market-economy acquisition costs is substantive based upon Plaintiffs' failure to report all such acquisition costs during the POR. Id. at 44. Accordingly, Commerce requests the court to reject Plaintiffs challenge on the grounds that it failed to first exhaust its administrative remedies.

Defendant-Intervenors argue that since China First failed to raise this issue during the administrative process, it cannot do so now. Defendant-Intervenors Brief at 30. Furthermore, Defendant-Intervenors argue that Commerce's decision is not based on adverse facts available since it used the same surrogate value for China First and Three Star that it did for all other

cooperative Chinese producers. Id. at 31.

China First claims that exhaustion would be futile. China First, however, did not raise its objections to Commerce's treatment of its market-economy inputs during the comment period available after the Department issued its Preliminary Results. Defendant's Motion and Response at 42-43. Instead it chose to wait until the Final Results to first challenge this as a ministerial error and then to challenge it on appeal. Id.

Exhaustion of administrative remedies is necessary before a litigant can raise a claim in a civil action. 28 U.S.C. § 2637(d); Wieland-Werke AG, et al. v. United States, 22 CIT 129, 4 F. Supp. 2d 1207 (CIT 1998). Failure to allow an agency to consider the matter and make its ruling deprives the agency of its function and results in the court usurping the agency's power as contemplated by the statutory scheme. Unemployment Compensation Comm'n of Alaska v. Aragon, 329 U.S. 143, 155, 67 S. Ct. 245, 91 L.Ed.136 (1946); see Floral Trade Council v. United States, 888 F. 2d 1366, 1368 (Fed. Cir. 1989). Although there is no absolute requirement to exhaust remedies in non-classification cases, it is left to the Court of International Trade to determine when exhaustion is appropriate. Koyo Seiko Co. Ltd., et al. v. United States, 26 CIT 170, 176,186 F. Supp. 2d 1332, 1338 (2002). Based upon the evidence presented to this court, China First cannot raise the issue of whether Commerce properly rejected its market economy acquisitions costs when it failed to challenge this decision at the administrative level. N.A.R., S.p.A. v. United States, 14 CIT 409, 741 F. Supp. 936, 944-45 (1990). China First's failure to exhaust the administrative remedies available precludes it from seeking the court's review. Aida Eng'g v. United States, 19 CIT 147, 150 (1995). In this instance, if China First had raised this issue after the Preliminary Results, Commerce could have conducted a further analysis.

However, because it failed to do so, and it has not shown that any exception to the exhaustion doctrine applies in this instance, review by the court at this time would be inappropriate.

**VI**

**Conclusion**

For the foregoing reasons, Commerce's Remand Redetermination is hereby affirmed and Defendant's Motion for Judgment Upon the Administrative Record is granted.

___/s/ Evan J. Wallach____
Evan J. Wallach, Judge

Dated: March 7, 2006
New York, New York