# United States Court of Appeals for the Federal Circuit

---

**ITOCHU BUILDING PRODUCTS,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1044

---

Appeal from the United States Court of International Trade in No. 11-CV-0208, Judge Timothy C. Stanceu.

---

Decided: August 19, 2013

---

NED H. MARSHAK, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief were BRUCE M. MITCHELL, ANDREW T. SCHUTZ and KAVITA MOHAN.

RYAN M. MAJERUS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, CARRIE A. DUNSMORE, Trial Attorney. Of counsel on the brief was NATHANIEL HALVORSON, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington,

DC. Of counsel was MELISSA M. DEVINE, Attorney, United States Department of Justice, of Washington, DC.

———————————

Before LOURIE, BRYSON, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Itochu Building Products asked the United States Department of Commerce to act under 19 U.S.C. § 1675(b) to revoke part of an antidumping-duty order applicable to imported steel nails. Before Commerce issued its preliminary determination to do so, Itochu submitted comments, met with Commerce officials, and provided legal authority to urge that the requested partial revocation take effect at an early specified date. Commerce rejected that position in its preliminary ruling, saying that a later date would apply, and generally invited interested parties to comment. Itochu did not avail itself of that opportunity. In its final ruling, Commerce adopted the partial revocation, which the domestic industry did not oppose, but adhered to its position giving the change the later effective date.

When Itochu challenged the effective-date determination in the United States Court of International Trade, the court declined to address the merits. Instead, invoking 28 U.S.C. § 2637(d)'s directive to require exhaustion of administrative remedies "where appropriate," the trade court dismissed Itochu's challenge because Itochu had failed to resubmit to Commerce, after the preliminary ruling, the comments it had submitted earlier.

We reverse the trade court's ruling as an abuse of discretion. In the circumstances here, requiring exhaustion served no discernible practical purpose and would have risked harm to Itochu. We remand for further proceedings.

BACKGROUND

In August 2008, after finding that certain steel nails exported from the People's Republic of China were being

sold in the United States at less than fair value, the Department of Commerce issued an antidumping-duty order under 19 U.S.C. §§ 1673d-e, effective as of January 23, 2008. *Certain Steel Nails from the People's Rep. of China*, 73 Fed. Reg. 44,961 (Dep't of Commerce Aug. 1, 2008) (antidumping-duty order). In September 2009, Commerce initiated an administrative review of that order, under 19 U.S.C. § 1675(a), for the period January 23, 2008, to July 31, 2009. *Certain Steel Nails from the People's Rep. of China*, 74 Fed. Reg. 48,224, 48,226-28 (Dep't of Commerce Sep. 22, 2009) (initiation of admin. rev.).

Mid Continent Nail Corporation was one of several domestic nail manufacturers that had petitioned Commerce to launch the investigation that had resulted in the antidumping-duty order. On February 11, 2011, while the administrative review was still underway, Mid Continent notified Commerce that it no longer had an interest in receiving antidumping-duty relief from imports of four types of steel nails. *See Certain Steel Nails from the People's Rep. of China*, 76 Fed. Reg. 22,369 (Dep't of Commerce Apr. 21, 2011) (initiation and prelim. results). Mid Continent asked Commerce to initiate a changed-circumstances review, under 19 U.S.C. §§ 1675(b), (d)(1), to revoke the order as to those four types of nails. *Id.* Mid Continent asked that the revocation be effective for all entries that (a) were made on or after January 23, 2008, and (b) were not subject to final duty determinations (*i.e.*, were not yet liquidated) when the changed-circumstances order eventually issued. January 23, 2008, was the effective date of the antidumping-duty order and the start of the period covered by the pending administrative review. *Id.*

On February 22, 2011, Itochu submitted comments to Commerce in support of Mid Continent's request for partial revocation of the antidumping-duty order. Itochu urged that partial revocation of the order back to January 23, 2008, would be consistent with two of Commerce's

policies.   First, it argued, Commerce had a practice of revoking orders for unliquidated entries that were not yet subject to a completed administrative review.   Itochu argued that United States Customs and Border Protection does not fix and assess the final amount of duties owed on entries (*i.e.*, does not liquidate such entries) until an administrative review is complete, *see* 19 U.S.C. § 1675(a)(2)(C), and here, the administrative review was still pending.   Second, and in any event, should the administrative review conclude before Commerce could make its final determination in the changed-circumstances review, Itochu explained that its January 2008 date was consistent with Commerce's practice of granting similar requests where entries remain unliquidated for other reasons, such as ongoing litigation.   Itochu also requested that Commerce expedite consideration of the changed-circumstances review because the domestic industry and interested parties supported the requested partial revocation.

On March 8, 2011, counsel for Itochu met with eight officials from the Department of Commerce to present its argument that partial revocation should take effect as of January 23, 2008.   In support of its position, Itochu's counsel provided the officials with 41 pages of excerpts from prior Commerce determinations in which, Itochu argued, Commerce had granted requests that partial revocations in changed-circumstances reviews apply to all unliquidated entries.

On March 23, 2011, Commerce completed its administrative review for the period from January 23, 2008, to July 31, 2009.   *Certain Steel Nails from the People's Rep. of China*, 76 Fed. Reg. 16,379 (Dep't of Commerce Mar. 23, 2011) (final results admin. rev.). Commerce issued liquidation instructions to Customs for the steel nails covered by the administrative review, but liquidation of Itochu's entries was thereafter enjoined pending a challenge in the trade court to the final results of the administrative review.   *See Mid Continent Nail Corp. v. United*

*States*, No. 11-cv-119-DAR, Dkt. No. 13 (Int'l Trade Ct. May 20, 2011) (order granting preliminary injunction).

On April 21, 2011, Commerce took two actions simultaneously: it formally initiated the changed-circumstances review and, granting Itochu's request for expedition, published the preliminary results of the review. *Certain Steel Nails from the People's Rep. of China*, 76 Fed. Reg. at 22,369. Commerce preliminarily determined that "the domestic producers . . . ha[d] no interest in the continued application of the antidumping duty order" for the four types of nails at issue and that it intended to revoke the order for those nails. *Id.* at 22,371.

Regarding the effective date of the revocation, Commerce noted that Itochu had submitted comments, and met with department officials, to urge that the revocation take effect January 23, 2008. *Id.* at 22,370. But Commerce preliminarily rejected that position, because it did "not find this to be consistent with [Commerce's] recent practice." *Id.* at 22,371. Commerce instead said that the revocation would be effective August 1, 2009, the day after the period covered by the just-completed administrative review. *Id.* Commerce explained: "It is the Department's practice to revoke (in whole or in part) an antidumping duty order so that the effective date of revocation covers entries that have not been subject to a completed administrative review." *Id.* Commerce invited interested parties to comment on the preliminary results within 14 days, though it did not cite 19 C.F.R. § 351.309, the regulation that governs submission of written argument by interested parties. *Id.* Commerce explained that the timing of its final results would depend on whether it received comments: if so, the final results would not issue for up to 270 days; if not, they would issue within 45 days. *Id.*

Itochu did not submit comments in response to the preliminary results. On May 24, 2011, 33 days after publication of the preliminary results, Commerce published the final results of the changed-circumstances

review. *Certain Steel Nails from the People's Rep. of China*, 76 Fed. Reg. 30,101 (Dep't of Commerce May 24, 2011) (final results). Commerce concluded that it would revoke the antidumping duty order with regard to the four types of steel nails at issue. *Id.* Again describing its interactions with Itochu concerning the effective date of the revocation, Commerce again rejected Itochu's position, instead adopting August 1, 2009, as the effective date. *See id.* at 30,101-02. Commerce explained that its "recent practice has been to select the date after the most recent period for which a review was completed . . . as the effective date." *Id.* at 30,102 & n.5.

Itochu challenged Commerce's determination regarding the effective date in the trade court and moved for judgment on the agency record under that court's Rule 56.2. On September 19, 2012, the court issued its decision. *Itochu Bldg. Prods. v. United States*, 865 F. Supp. 2d 1332 (Ct. Int'l Trade 2012). It did not reach the merits of the proper effective date for the partial revocation of the antidumping-duty order. Rather, relying on its authority under 28 U.S.C. § 2637(d) to "require the exhaustion of administrative remedies" "where appropriate," the court found that Itochu had failed to exhaust its administrative remedies by "declin[ing] to file comments in response to the combined notice of initiation and notice of preliminary results of that review." *Id.* at 1337. According to the court, Itochu was required to "raise all relevant arguments at the time Commerce request[ed] comments." *Id.* Having not done so, the court ruled, Itochu had waived any objection to Commerce's decision as to the effective date. *Id.*

The trade court rejected Itochu's argument that because Commerce did not cite 19 C.F.R. § 351.309 in its preliminary results, Itochu was not on notice that it would lose its opportunity to contest Commerce's effective date determination by not responding to Commerce's preliminary results. The court reasoned that the exhaustion requirement here was not regulatory in nature, but

rather arose from the exhaustion doctrine as codified in § 2637(d). *Id.* at 1338. Accordingly, the exhaustion requirement applied whether or not section 351.309 was explicitly referenced. *Id.* The trade court also addressed Itochu's argument that resubmitting its comments would have been futile because Commerce was simultaneously defending its recent effective-date "practice" in an active trade court case, *Heveafil Sdn. Bdh. v. United States*, No. 04-00477 (Ct. Int'l Trade filed Sep. 9, 2004). The court rejected the futility contention on the ground that Commerce "did not indicate in its notice that there would be no possibility of a change in position on the effective date issue." *Itochu Bldg. Prods.*, 865 F. Supp. 2d at 1338-39. Itochu appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The trade court, relying on its discretionary authority under 28 U.S.C. § 2637(d), held that Itochu waived its objection to Commerce's effective-date determination because it did not resubmit, after the preliminary results rejected its position, the argument it had fully presented before that rejection. We review for abuse of discretion the trade court's determination that dismissal for failure to exhaust was "appropriate" here. 28 U.S.C. § 2637(d); *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007). In the circumstances presented, we hold, dismissal on exhaustion grounds was an abuse of discretion.[1]

---

1    We do not adopt Itochu's suggestion that exhaustion is excused simply because Commerce did not ask for case briefs under 19 C.F.R. § 351.309 in its preliminary results. Failure to exploit an available agency remedy, even if not specifically required, can constitute a failure to exhaust in appropriate circumstances. See Corus Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007).

This court has explained that section 2637(d) "indicates a congressional intent that, absent a strong contrary reason, the [trade] court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). The requirement that invocation of exhaustion be "appropriate," however, requires that it serve some practical purpose when applied. Inquiry into the purposes served by requiring exhaustion in the particular case, and any harms caused by requiring such exhaustion, is needed to determine appropriateness.

Requiring exhaustion can protect administrative agency authority and promote judicial efficiency. *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). The requirement can protect an agency's interest in being the initial decisionmaker in implementing the statutes defining its

---

On the other hand, Itochu was under no specific requirement to file a case brief. In Corus Staal, the plaintiff filed a case brief, as 19 C.F.R. § 351.309(b)(1) expressly contemplates for the "administrative review" involved, and that filing was subject to the requirement, 19 C.F.R. § 351.309(c)(2), that, when a case brief is filed, it must include all arguments the submitter believes remain pertinent. Corus Staal, 502 F.3d at 1378. Those provisions do not apply here. 19 C.F.R. § 351.309(b)(1) (not listing changed-circumstances reviews), § 351.309(c)(2) (what must be included in a case brief if filed). Similarly, section 351.309(c)(1) establishes only the timing rules for any case briefs filed; it does not impose duties to file. And section 351.109(b)(2) merely contemplates Commerce "requests." See also 19 C.F.R. § 351.221(b)(4)(ii) (Commerce will issue an "invitation for argument" in preliminary results). With no directive requiring a filing after the preliminary results here, either by general regulation or case-specific Commerce command, the exhaustion analysis is not altered by the regulations.

tasks. *Id.* And it can serve judicial efficiency by promoting development of an agency record that is adequate for later court review and by giving an agency a full opportunity to correct errors and thereby narrow or even eliminate disputes needing judicial resolution. *Id.* at 145-46. At the same time, "the interest of the individual in retaining prompt access to a federal judicial forum" is taken into account in deciding when exhaustion is demanded in order to protect "institutional interests." *Id.* at 146.

Courts have recognized several recurring circumstances in which institutional interests are not sufficiently weighty or application of the doctrine would otherwise be unjust. For example, a party often is permitted to bypass an available avenue of administrative challenge if pursuing that route would clearly be futile, *i.e.*, where it is clear that additional filings with the agency would be ineffectual. *See Corus Staal*, 502 F.3d at 1378-79 (futility applies in situations where plaintiffs "would be 'required to go through obviously useless motions in order to preserve their rights'") (quoting *Bendure v. United States*, 554 F.2d 427, 431 (Ct. Cl. 1977). Requiring exhaustion may also be inappropriate where the issue for the court is a "pure question of law" that can be addressed without further factual development or further agency exercise of discretion. *See Agro Dutch*, 508 F.3d at 1029. In such circumstances, among others, requiring exhaustion may serve no agency or judicial interest, may cause harm from delay, and may therefore be inappropriate.

In the present case, no purpose was served by requiring Itochu to have resubmitted its effective-date argument after Commerce announced the preliminary results. Itochu put its argument on the record before Commerce issued its preliminary results: it set forth its position in comments, met with eight department officials to discuss the issue, and submitted legal support for its position. Nothing in the record suggests that any additional material from Itochu would have been significant to Commerce's consideration of the issue or to later judicial

review. Indeed, the trade court indicated that a simple resubmission would have sufficed for exhaustion. *Itochu Bldg. Prods.*, 865 F. Supp. 2d at 1339.

Nothing in Commerce's clear rejection of Itochu's position, in the preliminary results, adverted to any consideration that was material to Commerce's decision about the effective date and that Itochu had failed to address. In its final results, Commerce likewise identified no such unaddressed material consideration. Nor, in the final results, did Commerce reject Itochu's effective-date position for a failure to exhaust or indicate that it thought Itochu had abandoned its position. To the contrary, Commerce referred to Itochu's position and again ruled on the effective-date issue on the merits. Nothing in Commerce's two pronouncements in this case hints at something significant that Itochu could have said but did not.

The affirmatively stated basis for Commerce's ruling, moreover, together with Commerce's contemporaneous in-court elaboration of its position on the issue, strongly suggests that a resubmission by Itochu would have been futile. Commerce twice simply invoked its "recent practice." And that practice, evidently, was grounded in the legal position that Commerce was at the time defending in the *Heveafil* case: that the statute, specifically the provision governing administrative reviews, 19 U.S.C. § 1675(a), barred it from including in changed-circumstances relief any entries, even unliquidated entries, that had been subject to a completed administrative review. *See Heveafil Sdn. Bdh. v. United States*, No. 04-00477, 2012 WL 934102, at *2 (Ct. Int'l Trade Mar. 21, 2012). Commerce had been pressing that position since before the steel nails antidumping-duty order even issued. *See Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States,* 533 F. Supp. 2d 1290, 1293-94 (Ct. lnt'l Trade 2007). The trade court in 2007 had rejected that legal position, which, the court added, did not actually mirror Commerce's practice. *Id.* at 1294-95, 1296-97. But there is no indication, and Commerce did not suggest when

asked at oral argument in the present case, that Commerce had abandoned its position even by 2012, when the *Heveafil* court again rejected it. 2012 WL 934102, at *3.

In these circumstances, there was no reasonable prospect that Commerce would have changed its position in the present changed-circumstances review if only Itochu had re-filed its comments, in 2011, after Commerce announced its preliminary results. Commerce's apparent position at the time made such comments legally immaterial. Commerce had heard everything on the issue that Itochu had to say. An inference of futility is not fairly negated by indulging the singularly unlikely assumption that Commerce would have changed its legal position in this proceeding in 2011 while it was defending that position in court.

For those reasons, there was no practical purpose served by requiring Itochu to file comments on the effective-date issue after Commerce released its preliminary results. At the same time, Itochu had a concrete interest in avoiding a substantial delay in obtaining a final agency decision that making such a pointless filing could have caused. If Itochu had resubmitted its comments after Commerce issued its preliminary results, Commerce could have taken nine months (270 days) from the preliminary-results announcement to issue its final determination, whereas Commerce would issue its final determination within 45 days if no comments were submitted. Commerce might not have taken the full 270 days, but there was a substantial risk that it would have taken much or all of that extra time. Such extra time, of up to about seven months, would have prejudiced Itochu, which would have had to continue depositing antidumping duties on the four types of nails at issue, and would have had to postpone judicial review, while it waited for a decision. With no purpose served by exhaustion here, and a concrete interest in prompt judicial review impaired by requiring Itochu's resubmission of earlier comments, we conclude, the trade court could not properly find it "ap-

propriate" to invoke the exhaustion doctrine to bar consideration of Itochu's challenge on the merits.

This court's decision in *Corus Staal* does not dictate a contrary result. There, Corus first included its argument, on an issue about whether it had absorbed imposed duties, in a submission made in response to an agency request for information in an administrative review. *Corus Staal*, 502 F.3d at 1378. In its preliminary results, Commerce rejected the argument that Corus made in its submission. *Id.* Corus did not challenge that determination in its subsequent case brief as required by 19 C.F.R. § 351.309(c)(2). *Id.* The trade court held that Corus had failed to exhaust its remedies in those circumstances, notwithstanding Corus's argument that including this challenge in its case brief would have been futile because of Commerce's consistent position on duty absorption. *Corus Staal*, 502 F.3d at 1380.

This court held that the trade court did not abuse its discretion. Even though Commerce chose an approach to duty absorption different from what Corus had advocated, Commerce's position reflected policy decisions, not a perceived statutory mandate, and Commerce was "not bound to adhere to the approach it employ[ed] if a sufficiently persuasive showing [wa]s made that the approach [wa]s flawed in general or in its application to a particular case." *Id.* Corus thus could and should have tried to make a more comprehensive argument to Commerce regarding how to exercise that discretion. *Id.* Further, even if Commerce had continued to reject Corus's legal or policy arguments, it "might have accepted Corus's factual showing that it had not [in fact] absorbed antidumping duties, thereby obviating the need for judicial review." *Id.* Indeed, because Corus did not set forth its factual and legal arguments in detail before the agency, Commerce did not have the "opportunity to set forth its position in a manner that would facilitate judicial review." *Id.*

The present case differs from *Corus Staal* in key respects, even beyond what regulatory requirements apply.

*See* note 1, *supra.* Here, Commerce's position, which Commerce was defending in court at the time, was that it had no discretion in the matter because it was constrained by statute to reject Itochu's position. Moreover, Commerce has not identified any new factual or legal argument that Itochu could have made after Commerce issued its preliminary results that might have affected Commerce's position, aided judicial review, or given Itochu the relief it sought. In these circumstances, which are likely rare ones, the demanding abuse-of-discretion standard for reversal of an exhaustion ruling under section 2637(d) is met.[2]

## CONCLUSION

The decision of the trade court—dismissing Itochu's challenge to Commerce's effective-date determination for failure to exhaust administrative remedies—is reversed. The case is remanded for further proceedings.

**REVERSED AND REMANDED**

---

[2] Like *Corus Staal*, this court's decision in *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375 (Fed. Cir. 2008), involved circumstances materially different from those presented here. *Id.* at 1383-84 (in an administrative review, after trade-court remand for Commerce to consider policy and party-specific issues, party did not comment on issues). *See also Carpenter Technology Corp. v. United States*, 452 F. Supp. 2d 1344, 1346 (Ct. Int'l Trade 2006) (administrative review; "complex, fact-specific issue"); *China First Pencil Co., Ltd. v. United States*, 427 F. Supp. 2d 1236, 1243-44 (Ct. Int'l Trade 2006) (administrative review; similar case-specific, fact-based issues); *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 342 F. Supp. 2d 1191, 1205 (Ct. Int'l Trade 2004) (administrative review; same).